Skeet Hooks, et al. Carpeton Mills, Inc.

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-05-059-CV

SKEET HOOKS AND WIFE, LINDA APPELLANTS

HOOKS, D/B/A FLOORS AND WINDOWS PLUS

V.

CARPETON MILLS, INC. APPELLEE

------------

FROM THE 67TH DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

I. Introduction

Appellants Skeet and Linda Hooks, d/b/a Floors and Windows Plus, (collectively Appellants) bring this interlocutory appeal from the trial court’s order granting Appellee Carpeton Mills, Inc.’s special appearance.  
See
 
Tex. R. Civ. P. 
120a; 
Tex. Civ. Prac. & Rem. Code Ann. 
§ 51.014 (Vernon Supp. 2005).  We will affirm.

II. Standard of Review

Whether a court has personal jurisdiction over a defendant is a question of law, which we review de novo.  
BMC Software Belgium, N.V. v. Marchand
, 83 S.W.3d 789, 794 (Tex. 2002) (disapproving of abuse of discretion standard of review).  But proper exercise of personal jurisdiction must sometimes be preceded by resolution of underlying factual disputes, typically whether a defendant has sufficient contacts with Texas.  
See
 
Botter v. Am. Dental Ass'n
, 124 S.W.3d 856, 861 (Tex. App.—Austin 2003, no pet.).  When the trial court makes findings of fact following a special appearance hearing, they are binding on this court unless challenged on appeal pursuant to ordinary insufficiency-of-the-evidence claims.  
Id.
; 
Mort Keshin & Co. v. Houston Chronicle Publ’g Co.
, 992 S.W.2d 642, 645 (Tex. App.—Houston [14th Dist.] 1999, no pet.); 
Hotel Partners v. KPMG Peat Marwick
, 847 S.W.2d 630, 632 (Tex. App.—Dallas 1993, writ denied).  In making such findings of fact, the trial judge may draw reasonable inferences from the evidence presented.  
Hotel Partners
, 847 S.W.2d at 632.   

Here, following the special appearance hearing, 
the trial court made findings of fact.
(footnote: 2)  Appellants do not challenge these findings on appeal; they instead contend that the trial court misapplied the law to the facts it found. Accordingly, the unchallenged facts found by the trial court are binding upon this court, and we utilize them to recite the factual background set forth below.  
See Royal Mortgage Corp. v. Montague
, 41 S.W.3d 721, 730 (Tex. App.—Fort Worth 2001, no pet.), 
disapproved of on other grounds, Michiana Easy Livin' Country, Inc. v. Holten
, 168 S.W.3d 777, 778-79 (Tex. 2005).

III. Factual Background

Appellants are residents of Texas doing business in Texas.  Carpeton is a Georgia corporation that manufactures and sells carpet in Georgia.  Couture Carpet International is a Texas company that represents several carpet manufacturers, including Carpeton, and acts as an independent contractor for these manufacturers.  Couture represents Carpeton in North Texas and Oklahoma. 

One day Appellants showed some carpet to Bret McLaughlin, a subagent of Couture, and asked whether McLaughlin knew of a company that could replicate the carpet for a lower price.  McLaughlin took samples of the carpet to Larry Huddleston, the owner of Couture, and asked Huddleston about the possibility of replicating the carpet.  Huddleston decided that, of all the manufacturers Couture represented, Carpeton would most likely be able to replicate the carpet.  Huddleston mailed Carpeton the carpet sample and asked Carpeton if it could produce similar carpet at a cheaper price.  Carpeton produced the carpet and mailed samples back to Couture.  McLaughlin showed the samples to Appellants, who decided that one was acceptable.    

Evidence presented established Carpeton’s standard procedure for processing an order.  A customer would order carpet through Couture or another independent sales representative; Couture or another independent sales representative would then place the order with Carpeton.  Carpeton would process the order in Georgia and send an invoice to the customer directly.  The customer would send payment to either Carpeton in Georgia or to Carpeton’s factoring institution in North Carolina.  Then, Carpeton would ship the carpet free on board (“F.O.B.”) Eton, Georgia, and the customer would take title at that point.
(footnote: 3)  The customer would then determine where the carpet was to be shipped.  

In the present case, the invoice provided for payment by Appellants to be made to Carpeton’s factoring institution in North Carolina.  Although there is no evidence demonstrating whether Appellants made payment to Carpeton in Georgia or via Carpeton’s North Carolina factoring institution, it is undisputed that Appellants made payment and that such payment occurred outside Texas.  After taking title to the carpet in Eton, Georgia, Appellants directed that portions of the carpet they purchased be shipped to four locations:  restaurants located in Nevada, Arizona, and California.   

After receiving the carpet, Appellants filed the instant suit against Carpeton, alleging that the carpet was defective.  Carpeton filed a special appearance, claiming that Texas courts possessed neither general nor specific jurisdiction over it. 

The trial court initially denied Carpeton’s special appearance after a hearing.  The trial court later vacated that order and granted Carpeton’s special appearance.  Based on its findings of fact, the trial court concluded that Carpeton did not engage in systematic and continuous activity in Texas sufficient to subject it to general jurisdiction in Texas and was not subject to specific jurisdiction in Texas.   

IV. Personal Jurisdiction

The plaintiff bears the initial burden of pleading sufficient allegations to bring a nonresident defendant within the provisions of the long-arm statute.  
BMC Software
, 83 S.W.3d at 793.  A defendant who challenges a trial court’s exercise of personal jurisdiction through a special appearance bears the burden of negating all jurisdictional bases.  
Kawasaki Steel Corp. v. Middleton
, 699 S.W.2d 199, 203 (Tex. 1985).  We rely on precedent from the United States Supreme Court as well as our own state’s decisions in determining whether a nonresident defendant has met its burden.  
BMC Software
, 83 S.W.3d at 795. 
A.  No General Jurisdiction

In their first issue, Appellants contend that the trial court erred by granting Carpeton’s special appearance because Carpeton subjected itself to general jurisdiction by maintaining a defined marketing plan in Texas.  Appellants point to fourteen “purposeful activities” by Carpeton that, in conjunction with its purported marketing plan, Appellants allege establish the trial court’s general jurisdiction over Carpeton, including the following:  Carpeton divides Texas into several regions and assigns each of its three Texas sales representatives to a specific geographic sales territory in the state; Carpeton regularly provides the sales representatives with leads for Texas customers and regularly sends correspondence to the representatives, urging them to promote its products in Texas; North Texas has been the top grossing national region for Carpeton in four of the last five years; and Carpeton provides bonuses to the Texas sales representatives for selling its products in Texas. General jurisdiction allows a forum to exercise jurisdiction over a defendant even if the cause of action did not arise from or relate to a defendant’s contacts with the forum.  
Helicopteros Nacionales de Colombia, S.A. v. Hall
, 466 U.S. 408, 414-16, 104 S. Ct. 1868, 1872-73 (1984); 
Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.
, 815 S.W.2d 223, 228 (Tex. 1991).  General jurisdiction is only present, however, when a defendant’s contacts with a forum are “continuous and systematic,” a more demanding minimum-contacts analysis than specific jurisdiction. 
Guardian Royal
, 815 S.W.2d at 228
.  General jurisdiction is premised on the notion of consent.
  See Am. Type Culture Collection, Inc. v. Coleman
, 83 S.W.3d 801, 808 (Tex. 2002), 
cert. denied
, 537 U.S. 1191 (2003)
.  That is, by invoking the benefits and protections of a forum’s laws, a nonresident defendant consents to being sued there.  
Id.
  

When a nonresident defendant purposefully structures transactions to avoid the benefits and protections of a forum’s laws, the legal fiction of consent no longer applies.  
Id.
  For general jurisdictional purposes, we do not view each contact in isolation.  
Id
. at 809.  All contacts must be carefully investigated, compiled, sorted, and analyzed for proof of a pattern of continuing and systematic activity.  
Id.
; 
Schlobohm v. Schapiro
, 784 S.W.2d 355, 359 (Tex. 1990). 

In the present case, because Appellants allege that general jurisdiction exists, we examine whether Carpeton met its burden of establishing that its contacts with Texas were not continuous and systematic.
  
See Coleman
, 83 S.W.3d at 807.  Carpeton is incorporated under Georgia law, and its principal office and place of business are in Georgia.  Carpeton never conducted business in Texas, had any business office or employee in Texas, owned any real property in Texas, held a bank account in Texas, advertised in a Texas publication or journal, had Texas telephone listings, or made unsolicited mailing to Texas customers.  Carpeton has never been issued a certificate of authority to conduct business in Texas, and it never appointed a registered agent for service of process in Texas.  In the past twenty years, on two occasions two Carpeton representatives made business-related trips to Texas.   

Carpeton never sold carpet in Texas.  All carpet orders were sent to Carpeton’s office in Georgia for approval and acceptance, Carpeton made the decision to accept or reject an order in Georgia, and it manufactured its carpet in Georgia.  After processing an order, Carpeton completed the sale in Georgia, and the customer determined where the carpet would be shipped.  Carpeton sold all its goods F.O.B. Eton, Georgia.  The customer sent payment to either Carpeton’s office in Georgia or to Carpeton’s factoring institution in North Carolina.  Finally, all of Carpeton’s Texas sales representatives were independent contractors, not employees, of Carpeton.  These facts all weigh against a finding of general jurisdiction.  
See Bearry v. Beech Aircraft Corp.
, 818 F.2d 370, 376 (5th Cir. 1987) (holding that nonresident who engaged in nationwide advertising and visited Texas dealers on occasion was not subject to jurisdiction because it did not maintain offices in Texas, have agents in Texas, or have control over the Texas dealers); 
see also
 
Michel v. Rocket Eng’g Corp.
, 45 S.W.3d 658, 676-77 (Tex. App.—Fort Worth 2001, no pet.) (holding that acts of independent contractors, whom nonresident did not control, did not establish continuing and systematic contacts between nonresident and Texas).   Appellants rely on 
Kawasaki Steel
 and 
Giacomini v. Lamping
 to support their argument that Carpeton subjected itself to general jurisdiction through its marketing activities in Texas.  
See Kawasaki Steel, 
699 S.W.2d at 199
; S.P.A. Giacomini v. Lamping
, 42 S.W.3d 265 (Tex. App.—Corpus Christi 2001, no pet.).
  Unlike Carpeton, however, the defendant in 
Kawasaki Steel
 maintained an office in Texas to provide sales promotion, marketing research, and after-sales service to its customers, and the existence of that office played into the court’s jurisdictional holding.  
See
 699 S.W.2d at 201.  In 
Giacomini
, unlike here, the nonresident defendant shipped a large quantity of products directly to a Texas distributor with intentions of serving the Texas market, evidencing a “substantial, regular[,] and continuing flow of products from [the nonresident] to [its Texas distributor] with roughly 250,000 products being shipped directly to Texas, and a substantial number of the products being regularly sold in Texas.”  42 S.W.3d at 274; 
see CSR Ltd., 
925 S.W.2d at 595 (holding company headquartered in Australia, possessing no offices in Texas, no employees in Texas, no bank accounts in Texas, that had not solicited business in Texas, had not sent any correspondence to Texas, had never owned property in Texas, and had never paid taxes in Texas not subject to general jurisdiction in Texas).  Here, Carpeton did not maintain an office in Texas, had no employees in Texas, had no bank accounts in Texas, had not directly solicited business in Texas, and had not and did not ship goods directly to Texas but instead transferred title to the carpet to the consumer in Georgia.  Thus, 
Kawasaki Steel
 and 
Giacomini
’s holdings that the trial court possessed general jurisdiction over the nonresident defendants are not applicable here.

Additionally, both 
Kawasaki Steel 
and 
Giacomini
 predate the Texas Supreme Court’s decision in 
Coleman.  See Coleman, 
83 S.W.3d at 801.  In 
Coleman
, a nonresident defendant advertised in national and international journals, sold products to Texas residents for at least eighteen years, served as a repository for Texas researchers, contracted with a Texas medical center, and signed a repository contract in Maryland.  
Id.
 at 807.  The nonresident defendant in 
Coleman
 performed all the services related to the contract in Maryland and sent the goods F.O.B. Maryland.  
Id.
 at 807-08.  The corporation also purchased over $350,000 in supplies from thirty-three Texas vendors, and the corporation’s representatives attended five conferences in Texas.  
Id.
 at 808.  Thus, the company unquestionably had contacts with Texas, but the supreme court nonetheless held that no pattern of continuing systematic activity existed by the company in Texas.  
Id.
 at 809.  Interestingly, the supreme court expressly noted that the fact that title to the goods passed to purchasers outside Texas weighs against a finding that Texas acquired jurisdiction.  
Id.
  

Here, just as in 
Coleman
, Carpeton unquestionably had contacts with Texas.  
See id.
 at 809.  Here, just as in 
Coleman
, Carpeton structured its transactions to avoid the benefits and protections of Texas law.  Here, just as in 
Coleman
, Carpeton passed title to the goods—the carpet—outside of Texas.  Here, Couture’s sales representatives and other independent sales representatives acted as independent contractors for Carpeton, the Couture sales representatives were not exclusive representatives of Carpeton products (they also represented several other manufacturers), and Carpeton did not exercise control over the Couture sales representatives.
(footnote: 4)  
See 
Bearry
, 818 F.2d at 376.  The present facts are more compelling than the facts in 
Coleman
, and 
based on the trial court’s fact findings, we conclude that Carpeton’s contacts with Texas were neither substantial nor systematic and continuous.  
See Guardian Royal
, 815 S.W.2d at 228.  Thus, we hold that Carpeton has not subjected itself to general jurisdiction in Texas courts.  We overrule Appellants’ first point. 

B. No Specific Jurisdiction over Carpeton

In their second point, Appellants contend that Carpeton subjected itself to specific jurisdiction.  Appellants allege that specific jurisdiction exists because Carpeton shipped carpet samples to Texas on numerous occasions for Appellants’ inspection and approval, Carpeton’s sales representatives made numerous personal visits to Appellants’ place of employment regarding their order, Carpeton paid its sales representative a commission based on the sale to Appellants, and Carpeton sent invoices to Texas and accepted payment from Appellants via a check drawn on a Texas bank.  

For a court to exercise specific jurisdiction over a nonresident defendant, two requirements must be met:  (1) the defendant’s contacts with the forum must be purposeful, and (2) the cause of action must arise from or relate to those contacts.  
Guardian Royal, 
815 S.W.2d at 227.  When specific jurisdiction is asserted, the minimum contacts analysis focuses on the relationship among the defendant, the forum, and the litigation.  
Id. 
at 228.
 
It is well-established that a single contract with a Texas resident does not automatically subject a nonresident defendant to jurisdiction in Texas. 
 Burger King Corp. v. Rudzewicz
, 471 U.S. 462, 478, 105 S. Ct. 2174, 2185 (1985) (“If the question is whether an individual's contract with an out-of-state party alone can automatically establish sufficient minimum contacts in the other party's forum, we believe the answer clearly is that it cannot.”).  Moreover, when the entire substance of the contract is performed outside Texas, this factor weighs against a finding of specific jurisdiction.  
See, e.g., Blair Commc’ns, Inc. v. SES Survey Equip. Servs., Inc.
, 80 S.W.3d 723, 729-30 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (holding nonresident defendant that performed entire contract outside Texas was not subject to specific jurisdiction even though it initiated contract discussions with a Texas resident, entered into a contract with Texas resident, and made payment in Texas); 
3-D Elec. Co. v. Barnett Constr. Co.
, 706 S.W.2d 135, 143-44 (Tex. App.—Dallas 1986, writ ref’d n.r.e.) (holding nonresident defendant not subject to specific jurisdiction after entering into contract with Texas plaintiff over the telephone, sending correspondence to plaintiff in Texas, and making payments in Texas).   In the present case, the trial court found that the transaction at issue was performed in Georgia, that the order was placed in Georgia, and that Carpeton accepted and processed the order there.  
Carpeton shipped the carpet F.O.B. Eton, Georgia, transferring title from Carpeton to Appellants in Georgia. Carpeton did not deliver or install the carpet in Texas.  Appellants made payment outside Texas.  These findings demonstrate that Carpeton did not purposefully avail itself of the privilege of conducting activities within Texas and did not invoke the benefits and protections of our laws.  
See Burger King
, 471 U.S. at 475-76, 105 S. Ct. at 2183-84.  

Appellants nonetheless contend that 
this court’s opinion in 
Bissbort v. Wright Printing & Publ’g Co.
 supports their contention that Carpeton is subject to specific jurisdiction.  801 S.W.2d 588 (Tex. App.—Fort Worth 1990, no writ).  In 
Bissbort
, the nonresident defendant initiated negotiations with the Texas plaintiff, executed and returned a contract that required payment in Texas, and wired payment to Texas.  
Id.
 at 589.  Here, Carpeton did not initiate negotiations with Appellants; instead, Appellants went to a third party, Couture, who acted as the middleman between Appellants and Carpeton and who solicited Carpeton to manufacture the carpet at issue.  

We are also not persuaded that the facts that Appellants point to compel the conclusion that Carpeton is subject to specific jurisdiction.  First, Appellants allege that Carpeton sent carpet samples to Texas on numerous occasions, but the record shows that Carpeton twice sent samples to Couture in Texas for inspection.  These attenuated acts are insufficient to confer specific jurisdiction over Carpeton.  
See Guardian Royal
, 815 S.W.2d at 226; 
see also 3-D Elec. Co.
, 706 S.W.2d at 143-44 (holding that specific jurisdiction did not exist even though nonresident defendant sent correspondence to plaintiffs in Texas).  The next two facts recited by Appellants address Couture’s actions in Texas, but Appellants did not challenge the trial court’s finding that Couture was an independent contractor.  Thus, Couture’s actions cannot be a basis for personal jurisdiction over Carpeton.  
See Bearry
, 818 F.2d at 376 (holding that actions of Texas dealers, who were independent contractors, could not be imputed to nonresident for jurisdictional purposes); 
see also Coleman v. Klockner & Co. AG
, No. 14-04-00118-CV, 2005 WL 1981283, at *7 (Tex. App.—Houston [14th Dist.] Aug. 18, 2005, no pet.) (“The distinction between an independent contractor and an agent is important to the jurisdictional inquiry because the actions of an independent contractor by themselves are not sufficient to subject a [nonresident] corporation to the jurisdiction of the forum state.”).  Appellants claim that they paid Carpeton with a check drawn on a Texas bank, but this factual contention is not in evidence.  Carpeton did send an invoice to Appellants in Texas, stating that shipment was F.O.B. Eton, Georgia, but this action alone does not constitute sufficient contact with Texas to create specific jurisdiction over Carpeton.  
See Arth Brass & Aluminum Castings, Inc. v. Harsco Corp.
, No. 13-03-00323-CV, 2004 WL 103126, at *3, 6 (Tex. App.—Corpus Christi Jan. 23, 2004, no pet.) (mem. op.) (holding that nonresident lacked contacts necessary for specific jurisdiction even though nonresident defendant sent invoice to Texas stating that shipment was “F.O.B. Cleveland”); 
see also 3-D Elec. Co.
, 706 S.W.2d at 143-44 (holding that sending 
payment 
to Texas was insufficient contact for jurisdiction).  After reviewing the record, we conclude that Carpeton did not purposefully establish sufficient contacts with Texas.
  See Guardian Royal, 
815 S.W.2d at 227.  Thus, we hold that Carpeton has not subjected itself to specific jurisdiction in Texas.  We overrule Appellants’ second point.

V. Conclusion

We overrule both of Appellants’ points and affirm the trial court’s order granting Carpeton’s special appearance.

SUE WALKER

JUSTICE

PANEL B: CAYCE, C.J.; DAUPHINOT and WALKER, JJ.

DELIVERED: December 22, 2005

APPENDIX A

In the present case, the trial court made the following findings of fact:

1. Carpeton is a corporation incorporated under the laws of the State of Georgia and has its principal office and place of business in Murray County, Georgia.

2. Carpeton is a resident and citizen of the State of Georgia and is not a resident or citizen of the State of Texas.

3. Carpeton was incorporated and commenced doing business in 1971.

4. Before and during the time of the transaction at issue in this lawsuit, Carpeton’s principal business was manufacturing and selling custom and stock patterned carpets.

5. Carpeton’s sole place of manufacture was in Murray County, Georgia.  Its sole office was at the same location.  It had no other offices or facilities of any type.

6. Carpeton’s orders were submitted to Carpeton’s office in Georgia for approval and process.

7. Carpeton does not have and has never had an employee or any office or other facility for the manufacture or sale of carpet or other products in Texas.

8. Carpeton is not qualified to do business in the State of Texas[] and is not required to apply for authority to do business in Texas.  Carpeton does not do business in the State of Texas.

9. Carpeton has never actually or impliedly appointed the Secretary of State of Texas or any other person or entity as its agent for service of process in the State of Texas and has never had any reason for doing so.

10. Carpeton has never maintained any of its business records in the State of Texas and has never maintained or defended any action, suit, or administrative or arbitration proceeding in Texas.

11. Carpeton has never held meetings of directors or shareholders[] or carried on any internal affairs activities in Texas.

12. Carpeton does not have and has never had any bank account or other financial account with any financial institution in the State of Texas.

13. Carpeton does not and has never owned any real property in the State of Texas.

14. Carpeton has never consciously or intentionally availed itself of the privilege of conducting business or of any remedy in the State of Texas.  It has never invoked the benefit or protection of Texas laws[] and has never done any act with the intention of subjecting itself to jurisdiction of the courts in the State of Texas.

15. Carpeton has not had the minimum contacts with the State of Texas necessary to subject it to the jurisdiction of the courts of this State.

16. Carpeton has not sold any carpet in Texas.  All of Carpeton’s sales occur in Georgia.

17. Carpeton would receive telephone orders at its sole office in Murray County, Georgia.

18. The decision whether to accept an order was made by Carpeton in Georgia.  Payment for an order was . . . made by sending payment [either] directly to Carpeton in Georgia[] or to Carpeton’s bank/factor in North Carolina.

19. Carpeton never received payment in Texas.

20. After Carpeton completes the sale of carpet in Georgia, the carpet may be shipped by its owner to the location of the owner’s choice and discretion.  All goods sold by Carpeton were shipped F.O.B. Eton, Georgia.  A review of the invoices produced in this case confirms that Carpeton has not made any sales of carpet in Texas.  Texas residents, however, have instructed the shipping company, which is not Carpeton, on where their carpet was to be sent after it was sold in Georgia.

21. Carpeton did not advertise in Texas publications or journals.  It did not make unsolicited mailings to Texas customers or have a Texas telephone listing.

22. In the last twenty years, the only visits to Texas by Carpeton’s representatives that may be considered business-related were the following:  (1) a brief visit by Rick Odden, Director of Marketing, approximately 5-6 years ago, and (2) Carolyn Butler’s visit to Texas for a trade show in the early 1980s.  Carpeton did not play a role in the selection of the trade show location.

23. Larry Huddleston (“Huddleston”), Mike Sheppard, Chuck Heilman, Patricia Heilman, Ed Mindlin, and any employees or subagents thereof (collectively referred to as the “Sales Representatives”) were independent contractors for Carpeton at all times.

24. In the carpet industry, it is common for carpet manufacturers and dealers to utilize independent contractors to bring the two sides together.  Carpeton used the Sales Representatives for that purpose.

25. The Sales Representatives did not have a contract of employment with Carpeton and have never been employees of Carpeton.

26. Carpeton has never paid the Sales Representatives on a salary basis.  Carpeton paid them on a commission basis.  They controlled their own profitability and incurred the risk of not making money.  Carpeton was not required to withhold federal income taxes for commissions paid the Sales Representatives.

27. Carpeton, by written or spoken words or conduct, did not authorize any of the Sales Representatives to enter contracts in its behalf.

28. The Sales Representatives did not have authority to determine the prices for standard and custom orders for Carpeton carpet.

29. Carpeton did not control the means or methods by which the Sales Representatives conducted their respective businesses.  The Sales Representatives supplied their own vehicle[s] and set their own schedule.  Although they may be referred to in the carpet industry as “sales representatives,” they are still considered to be independent contractors[] and are not agents of any particular manufacturer.

30. At all times, Carpeton treated the Sales Representatives as independent contractors.

31. Huddleston operates his own carpet sales business, Couture Carpets International, Inc. 

32. Huddleston controlled his own work schedule.

33. Huddleston controlled the aspects of his work.

34. Huddleston did not have a contract of employment with Carpeton.

35. Huddleston did not have the authority to determine the prices for standard and custom order carpet.

36. Huddleston was a middleman, who brought the parties together. 

37. The transaction at issue in the above-styled cause was performed outside the State of Texas.

38. The order at issue was placed, processed, and accepted in Georgia.

39. [Appellants] made payment outside of Texas for the carpet at issue.

40. Carpeton transferred title for the carpet to [Appellants] in Georgia.

41. The carpet [Appellants] ordered from Carpeton was not delivered or installed in Texas.

42. The carpet was shipped by third parties to Nevada, California, and Arizona.

43. The exercise of jurisdiction over Carpeton would offend traditional notions of fair play [and] substantial justice.

44. Attempting to haul Carpeton into a Texas Court based on such alleged, incorrect, weak contacts, and the burden that it will impose on Carpeton in having to defend the meritless allegations in Texas, would be unfair and unjust.

FOOTNOTES
1:
See
 
Tex. R. App. P
. 47.4.

2:
The trial court’s findings of fact are attached as Appendix A.  

3:
“Free on board” means that title to property passes from the seller to the buyer at the designated F.O.B. point.  
See CSR Ltd. v. Link
, 925 S.W.2d 591, 594 (Tex. 1996).

4:
One of the trial court’s unchallenged findings of fact states that  “[a]lthough they [Couture’s sales representatives] may be referred to in the carpet industry as ‘sales representatives,’ they are still considered to be independent contractors, and not agents of any particular manufacturer.”